IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

SHAUN DISILVERIO,                              )
                                               )
        Plaintiff,                             )        Civil Action No. 05-1368
                                               )        ELECTRONICALLY FILED
        v.                                     )
                                               )
SERVICE MASTER PROFESSIONAL,                   )        Magistrate Judge Lisa Pupo Lenihan
                                               )
        Defendant.                             )        Doc. No. 20
                                               )
                                               )

## OPINION

LENIHAN, M.J.

        Currently before the Court for disposition is Defendant's Motion for Summary Judgment (Doc. No. 20). Plaintiff has alleged claims under the Pennsylvania Human Relations Act, 43 P.S. §951 *et seq.* ("PHRA"), and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII"), for retaliatory discharge.[1] Specifically, Plaintiff contends that his employment was terminated in retaliation for his refusal to provide a written statement about his knowledge of the incidents surrounding a charge of discrimination filed by another employee with the Pennsylvania Human Relations Commission ("PHRC"). Plaintiff further contends he was asked to provide knowingly false information in Defendant's defense of the PHRC claim. For the reasons set forth below, the Court finds that Plaintiff has failed to adduce evidence of a triable issue of fact regarding his claim of retaliatory discharge and that Defendant is entitled to judgment as a matter of law. Accordingly, Defendant's Motion for Summary Judgment will be granted.

---

1. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1367 and 42 U.S.C. § 2000e-5.

I.     **FACTS**

Plaintiff, Shaun Disilverio, was employed by Defendant, ServiceMaster Professional ("ServiceMaster"), from March 17, 2003 to April 30, 2004 as a site supervisor assigned to the Penn Center West Office Complex in Robinson Township, Pennsylvania.  ServiceMaster is a professional cleaning company engaged primarily in the business of cleaning office buildings and other commercial facilities, and is owned by Frank and Deborah Gibson.  The operations manager of ServiceMaster is Michael Beckadic, and the current area manager is Mark Leff.  John W. Loub is a former area manager of ServiceMaster.  At the time of Plaintiff's hire, Vince St. Clair was the account manager and Plaintiff's supervisor.

The dispute in this case centers on a series of events surrounding the discharge of another ServiceMaster employee, John Grimmitt, in January 2004, who was supervised by Plaintiff.  After his termination, Grimmitt filed a charge of discrimination with the PHRC ("Grimmitt discrimination charge"), which was served on ServiceMaster on March 17, 2004.  Shortly thereafter, Plaintiff was asked, as Grimmitt's supervisor, to provide a written account of his observation of the incident that was the basis for the Grimmitt discrimination charge.  In particular, on or about March 19, 2004, Vince St. Clair, at the request of Deborah Gibson, approached Plaintiff and asked him to provide a written statement on behalf of ServiceMaster for the PHRC.  Plaintiff was not asked to provide false statements (Pl.'s Dep. at 103, 108; D. Gibson Aff. ¶¶ 8-9; F. Gibson Aff. ¶¶ 9-10; St. Clair Dep. at 28); rather, he was asked to provide a statement in his own words on behalf of ServiceMaster (St. Clair Dep. at 24-36).

Plaintiff refused to do so on March 19, 2004, but told St. Clair that he wanted the weekend to think about it.  Upon learning of Plaintiff's refusal to provide the statement, Deborah Gibson

2

asked St. Clair to set up a telephone conference between Plaintiff, herself, St. Clair, and Beckadic on March 22, 2004. During this telephone conference, Deborah Gibson questioned Plaintiff as to why he did not want to provide the statement. (Pl.'s Dep. at 107, 109.) Plaintiff explained that he was uncomfortable with putting something in writing regarding the Grimmitt matter. (*Id.*) He also indicated that he did not agree with the company's termination of Grimmitt. (*Id.*) Deborah Gibson indicated during this conference that she was okay with Plaintiff's decision not to provide a written statement, and told Plaintiff to forget about providing it. (*Id.*; D. Gibson Aff. ¶ 11.) No one from ServiceMaster pursued the matter of the Plaintiff's refusal to provide a written statement any further. (Pl.'s Dep. at 115; D. Gibson Aff. ¶ 11; F. Gibson Aff. ¶ 12.) ServiceMaster eventually settled the Grimmitt discrimination charge for a nominal sum. (Pl.'s Dep. at 115; D. Gibson Aff. ¶ 12; F. Gibson Aff. ¶ 13.)

In late April of 2004, a series of meetings were held by ServiceMaster management with Plaintiff and his crew to address several matters involving scheduling, absenteeism, uniforms, and Plaintiff's lack of enforcement of company policies with his cleaning crew. In particular, on April 26, 2004, Beckadic, Loub, and Leff met with Plaintiff to discuss his supervisory role at the Penn Center West job site. Beckadic, Loub and Leff contend that the topics discussed at this meeting included the necessity for uniforms, proper time-keeping procedures, and the unauthorized use of the customer's gym facilities by ServiceMaster employees. Plaintiff disputes that these topics were discussed at that meeting and counters that the sole purpose of the April 26th meeting was to inform him that his supervisor, Vince St. Clair, had resigned. Beckadic, Loub, and Leff described Plaintiff's behavior at that meeting as defiant and refusing to follow company policies. Plaintiff denies that he was defiant and contends that he followed company policies at all times. (Pl.'s Aff.

¶¶ 14-18.)

On April 28, 2004, Beckadic reviewed the situation at Plaintiff's job site with Frank and Deborah Gibson, and it was decided that Beckadic, Loub, and Leff would meet with Plaintiff and his cleaning crew that evening at the job site. (Beckadic Aff. ¶ 10.) At that meeting, Beckadic introduced Loub as the new area manager, and then held a discussion regarding the scheduling of Plaintiff's cleaning crew and their problems with absenteeism. (Beckadic Aff. ¶¶ 11, 13.) According to Beckadic, Loub and Leff, Plaintiff constantly interrupted Beckadic when he spoke, and interjected belligerent or defiant remarks. (Beckadic Aff. ¶¶ 12, 14-15; Loub Aff. ¶¶ 4-5; Leff Aff. ¶¶ 7-10.) Plaintiff denies this account of the meeting and submits that the sole purpose of the meeting was to introduce Loub as the new area manager. (Pl.'s Aff. ¶ 12.) He again denies that he was defiant or insubordinate at this meeting. (Pl.'s Aff. ¶¶ 14, 18.)

According to Plaintiff, immediately prior to the April 28th meeting, an incident occurred between him and Beckadic, wherein Beckadic is alleged to have rubbed his hand on Plaintiff's face, without any provocation or comment from Plaintiff. (Pl.'s Aff. ¶ 13.) Plaintiff claims this incident was videotaped and witnessed by the security guard on duty, and that he filed a police report but did not press charges.[2] (*Id.*) Plaintiff states he has no idea why Beckadic did this. (*Id.*)

On April 29, 2004, Beckadic again spoke to Plaintiff regarding the necessity for uniforms. (Beckadic Aff. ¶ 18.) Later that same evening, three telephone conferences took place between Plaintiff and Beckadic.[3] Beckadic contends that Plaintiff used profanities to express his belief that

---

2. Despite a number of alleged witnesses and documentary evidence of this incident, Plaintiff has failed to provide any of it in support of his opposition to the summary judgment motion.

3. The parties dispute who initiated the three telephone calls, but that is not material to the outcome of this case.

he should be left alone to run his job as he saw fit.  (Beckadic Aff. ¶ 21.)  Plaintiff contends the discussion centered on a visit to Beckadic's residence by the Penn Hills Police Department in response to threats made by the boyfriend of an employee who had been disciplined by Beckadic. (Pl.'s Aff. ¶ 19.)

The next day, on April 30, 2004, Beckadic, Loub, and John Arendas went to Plaintiff's work site and terminated him.  (Beckadic Aff. ¶ 22; Loub Aff. ¶ 7.)  According to Defendant, the sole basis for Plaintiff's termination was his insubordination and refusal to follow its policies.[4] (Beckadic Aff. ¶ 23; Loub Aff. ¶ 8; Leff Aff. ¶ 12; D. Gibson Aff. ¶¶ 13-17; F. Gibson Aff. ¶¶ 14-17.)  Plaintiff denies the alleged basis for his termination, contending that his employment record was exemplary,  he was not insubordinate, and the first time he heard about the problems with time-keeping, the unauthorized use of the customer's gym facilities, scheduling or absenteeism was after he filed his charge of retaliatory discharge with the PHRC.  (Pl.'s Aff. ¶¶ 15-18.)

Plaintiff instituted the present action on September 30, 2005.  Discovery has been completed and Defendant has moved for summary judgment.  Defendant's motion for summary judgment and Plaintiff's opposition thereto have been fully briefed and are now ripe for disposition.

## II.    STANDARD OF REVIEW – MOTION FOR SUMMARY JUDGMENT

Summary judgment is appropriate if, drawing all inferences in favor of the nonmoving party,

---

4. On or about the end of January 2004 or the beginning of February 2004, Frank Gibson met with St. Clair to discuss problems with Plaintiff's performance.  (F. Gibson Aff. ¶ 5; St. Clair Dep. at 45-46.)  St. Clair testified at his deposition that Frank Gibson told him to start a "paper trail" on Plaintiff, meaning write-ups for job related issues.  (St. Clair Dep. at 45-46.)  In his opinion, St. Clair testified that Frank Gibson requested the "paper trail" because of his concern that Plaintiff was getting too friendly with the property manager for his job site.  This could lead to the property manager terminating the cleaning contract with ServiceMaster and hiring Plaintiff to provide the service.  According to St. Clair, Frank Gibson was concerned about losing that business.  (St. Clair Dep. at 46-47.)

"the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56 (c).  Summary judgment may be granted against a party who fails to adduce facts sufficient to establish the existence of any element essential to that party's case, and for which that party will bear the burden of proof at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

More specifically, the moving party bears the initial burden of identifying evidence which demonstrates the absence of a genuine issue of material fact.  Once that burden has been met, the nonmoving party must set forth "specific facts showing that there is a *genuine issue for trial*" or the factual record will be taken as presented by the moving party and judgment will be entered as a matter of law.  *Matsushita Elec. Indus. Corp. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed.R.Civ.P. 56(e)) (emphasis added by *Matsushita* Court).  An issue is genuine only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## III.   ANALYSIS

Plaintiff has brought a claim for retaliation based on Title VII and the PHRA.[5]  To withstand summary judgment on his retaliation claim, Plaintiff must establish a *prima facie* case of retaliation, which consists of three elements: (1) Plaintiff was engaged in a protected  activity; (2) he was subjected to an adverse employment action after or contemporaneous with the protected activity;

---

5.  Retaliation claims brought pursuant to the PHRA are analyzed in accordance with Title VII. *See Kelly v. Drexel Univ.,* 94 F.3d 103, 105 (3d Cir. 1996); *Allegheny Housing Rehab. Corp. v. Commw. of Pa., Pa. Human Relations Comm'n,* 516 Pa. 124, 127-28 n.2, 532 A.2d 315, 317 n.2 (1987).

and (3) a causal link exists between the protected activity and the employer's adverse action. *Moore v. City of Philadelphia,* 461 F.3d 331, 340-41 (3d Cir. 2006) (citing *Nelson v. Upsala Coll.,* 51 F.3d 383, 386 (3d Cir. 1995)); *Farrell v. Planters Lifesavers Co.,* 206 F.3d 271, 279 (3d Cir. 2000) (citations omitted); *Crumpton v. Potter,* 305 F.Supp.2d 465, 474 (E.D.Pa. 2004) (citation omitted). Defendant does not challenge Plaintiff's proof of the first two elements of his retaliation claim, and therefore, the Court assumes without deciding, for purposes of the motion for summary judgment, that Plaintiff has met his burden as to these elements.[6] As to the third element, causation, Plaintiff must demonstrate a "causal connection between the protected activity and an action that might have dissuaded a reasonable worker from making or supporting a charge of discrimination. This third element 'identif[ies] what [adverse employment action], if any, a reasonable jury could link to a retaliatory animus. The ultimate question in any retaliation case is an intent to retaliate *vel non.*'" *Id.* at 341-42 (quoting *Jensen v. Potter,* 435 F.3d 444, 449-50 & n.2 (3d Cir. 2006)).

If Plaintiff establishes a *prima facie* case of retaliation, the burden then shifts to Defendant to articulate a legitimate, non-retaliatory reason for the adverse employment action. *Id.* (citing *Krouse v. Am. Sterilizer Co.,* 126 F.3d 494, 500-01 (3d Cir. 1997)); *Jalil v. Avdel Corp.,* 873 F.2d

---

6. Under the retaliation provision of Title VII, the term "protected activity" refers to either participation in certain Title VII proceedings (the "participation clause"), or opposition to discrimination made unlawful by Title VII (the "opposition clause"). *Moore,* 461 F.3d at 341 (citing *Slagle v. County of Clarion,* 435 F.3d 262, 266 (3d Cir. 2006)). "Whether the employee opposes, or participates in a proceeding against, the employer's activity, the employee must hold an objectively reasonable belief, in good faith, that the activity they oppose is unlawful under Title VII." *Id.* (citing *Clark County v. Breeden,* 532 U.S. 268, 271 (2001)). As to the second element, the Supreme Court recently clarified the proof required to establish an adverse employment action, holding "that a plaintiff claiming retaliation under Title VII must show that a reasonable employee would have found the alleged retaliatory actions 'materially adverse' in that they 'well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Id.* (quoting *Burlington N. & Sante Fe Ry. Co. v. White,* 126 S.Ct. 2405, 2415, 165 L.Ed. 2d 345 (2006)).

701, 708 (3d Cir. 1989).  Once the Defendant comes forward with a legitimate, non-retaliatory reason, Plaintiff will avoid summary judgment by producing some evidence from which a jury could reasonably conclude "'that the employer's proffered explanation was false, and that retaliation was the real reason for the adverse employment action.'"  *Id.* (quoting *Krause,* 126 F.3d at 500-01).

In the instant case, Plaintiff identifies the protected activity as his refusal to provide a written statement on behalf of ServiceMaster with regard to a charge of discrimination filed by a co-worker whom he supervised.  Plaintiff's refusal to provide the written statement occurred between March 19 and 22, 2004.  The adverse employment action alleged here is Plaintiff's discharge from employment on April 30, 2004.

In support of its motion for summary judgment, Defendant argues that Plaintiff's retaliation claim fails because the record is devoid of any evidence suggesting a causal relationship between his refusal to provide the written statement and his discharge from employment.[7]   Initially, Defendant argues that the elapsed time between Plaintiff's refusal to provide a written statement and his discharge, *i.e.,* five to six weeks, is not so short as to be unusually suggestive of a retaliatory motive, and therefore, the Court should not infer causation merely from the temporal proximity of the two events.  Defendant further submits that Plaintiff has failed to adduce other evidence of retaliatory motive to prove causation.  In response, Plaintiff counters that causation may be inferred from the  short proximity in time between Plaintiff's refusal to provide the statement and his

---

7. Defendant also argues, in the alternative, that it has proffered a legitimate, non-retaliatory motive for the adverse employment action and Plaintiff has failed to show that such reason was pretextual.  In light of the Court's ruling that Plaintiff has failed to establish his *prima facie* case of retaliation, the Court does not reach the issue of whether Plaintiff has adduced sufficient evidence to raise a triable issue of fact as to whether Defendant's proffered reason is pretextual.

termination[8] and, in any event, he has provided direct evidence of retaliatory motive during the interim period between his refusal to provide the statement and his discharge to raise a material issue of fact as to causation.  For the reasons that follow, the Court agrees with the Defendant and finds that Plaintiff has failed to establish a triable issue of fact with regard to the causation element of his *prima facie* case of retaliation.

The law in this Circuit is fairly well established that mere temporal proximity between the protected activity and the adverse employment action ordinarily will not be sufficient to meet Plaintiff's burden of demonstrating a causal connection between the two events, unless the interim period is so short as to be unusually suggestive of retaliatory motive.  *Compare Jalil,* 873 F.2d at 708 (temporal proximity alone was enough to establish causation where adverse employment action occurred two days after the protected activity, and there were no allegations of wrongdoing by the employee during that time); *with Shellenberger v. Summit Bancorp., Inc.,* 318 F.3d 183, 189 (3d Cir. 2003) (holding ten day time period between protected activity and adverse employment action, along with evidence that supervisors made comments regarding plaintiff's EEOC complaint in close proximity to her discharge, was sufficient to survive summary judgment); *Zappan v. Pa. Bd. of Probation & Parole,* No. Civ. A. 00-1409, 2002 WL 32174230, * 10 (E.D.Pa. Nov. 25, 2002) (two

---

8.  Plaintiff fails to cite any legal authority for his position that temporal proximity is enough to infer causation here and makes no argument other than this conclusory statement.  The Court is not required to consider arguments consisting of nothing more than a conclusory assertion and not developed through proper briefing, such as the one made here.  *Reynolds v. Wagner,* 128 F.3d 166, 178 (3d Cir. 1997) (citing *Pennsylvania v. U. S. Dep't of Health & Human Serv.,* 101 F.3d 939, 945 (3d Cir. 1996) ("arguments mentioned in passing, but not squarely argued, will be deemed waived")) (other citation omitted); *see also Massie v. U. S. Dep't of Housing & Urban Dev.,* C.A. No. 06-1004, 2007 WL 184827, *3 n.5 (W.D.Pa. Jan. 19, 2007), *vacated in part on other grounds on reconsideration,* 2007 WL 674597 (W.D.Pa. Mar. 1, 2007) (an assertion lacking any substantive or meaningful analysis is undeveloped and wholly inadequate) (citing *Pennsylvania,* 101 F.3d at 945).

month period in between protected activity and adverse employment action was not unusually suggestive enough to demonstrative causation without more evidence); *Pritchett v. Imperial Metal & Chemical Co.,* No. Civ. A. 96-0342, 1997 WL 570929, *4 (E.D.Pa. Sept. 8, 1997) (same); *Nixon v. Runyon,* 856 F.Supp. 977, 988 (E.D.Pa. 1994) (no causation inferred from mere passage of four months); *Woods v. Bentsen,* 889 F.Supp. 178, 188 (E.D.Pa. 1995) (no causation inferred from mere passage of five months).   Thus, where temporal proximity alone is not enough to infer causation, a plaintiff can avoid summary judgment by  producing other evidence of causation, such as, for example, producing evidence of a pattern of antagonism or retaliatory motive during the intervening period, or by showing inconsistent reasons given by the employer for the adverse employment action.  *Farrell v. Planters Lifesavors Co.,* 206 F.3d 271, 280-81 (3d Cir. 2000) (citing *Kachmar v. SunGard Data Sys., Inc.,* 109 F.3d 173, 177-78 (3d Cir. 1997) (pattern of antagonism); *Waddell v. Small Tube Products, Inc.,* 799 F.2d 69, 73 (3d Cir. 1986) (inconsistent reasons for termination)); *see also Krouse,* 126 F.3d at 503-04 (where temporal proximity is lacking, courts may look to the intervening period for other evidence of retaliatory animus); *Thomas v. Town of Hammonton,* 351 F.3d 108, 114 (3d Cir. 2003) (quoting *Estate of Smith v. Marasco,* 318 F.3d 497, 513 (3d Cir. 2003)) (holding that in cases where "the temporal proximity is not so close as to be unduly suggestive," the court of appeals has recognized that "timing plus other evidence may be an appropriate test").  The Court notes, however, that these factors are not the exclusive means of establishing causation, and that  the totality of the evidence may also provide the necessary inference.  *See, e.g., Farrell,* 206 F.3d at 280 (citing *Kachmar,* 109 F.3d at 177).

In the case at bar, five to six weeks elapsed between Plaintiff's refusal to provide the written statement and his termination.  The Court finds that these two events are not so close in time so as

to be "unusually suggestive" of causation.[9]  Therefore, the Court must determine whether Plaintiff

has produced other evidence of causation during the interim period to satisfy the third element of

his retaliation claim.

A case which is somewhat factually analogous to the case at bar is *Washco v. Fed. Express

Corp.,* 402 F.Supp.2d 547 (E.D.Pa. 2005), which Defendant cites to support its argument that

evidence of causation is lacking.  In that case, the plaintiff-employee participated in the employer's

internal investigation regarding a complaint of racial discrimination filed by another employee.  The

plaintiff claimed that she was terminated in retaliation for her statements made during the internal

investigation and because of her association with her husband, who was employed by the same

employer and who filed a grievance claiming he was subjected to discrimination based on disability

and sex and retaliation for participating in another employee's internal investigation.[10] 402 F.Supp.

at 551-52.  The adverse employment action was her discharge, which occurred almost four months

after the protected activity.  The district court in *Washco* found that this time difference was not

unnecessarily suggestive of causation.  *Id.* at 560.  Nor did the court find a pattern of intervening

acts of retaliatory antagonism to satisfy the causation element.  At most, the district court noted one

possible act of antagonism–her transfer to another location, and held  that one act does not constitute

a "pattern" of antagonism.  *Id.*  The district court further found that the plaintiff failed to present any

evidence  that  her  termination  resulted  from  the  statements  she  made  during  the  internal

---

9.  *See* note 8 *supra.*

10.  Based on the Third Circuit's decision in *Fogleman v. Mercy Hosp., Inc.,* 283 F.3d 561, 567-
70 (3d Cir. 2002), the district court in *Washco* held the plaintiff could not bring a retaliation
claim predicated on a protected activity allegedly engaged in by her husband.  *Washco,* 405
F.Supp.2d at 556.

investigation.  *Id.*  Rather, the district court found the evidence suggested that her termination resulted from her receiving three performance letters within a twelve month period for tardiness, which was grounds for termination under the employee handbook, the last of which was issued on the date of termination.  The district court concluded therefore, that plaintiff had failed to show a causal link between the protected activity and the adverse employment action.  *Id.*

Based on *Washco,* Defendant argues that Plaintiff here has likewise failed to establish a pattern of retaliatory antagonism during the five and one-half weeks between his refusal to provide a written statement and his discharge.  In addition, Defendant contends that Plaintiff has failed to produce evidence to show that its reasons for terminating him were inconsistent.  Because the Plaintiff has failed to produce direct evidence of retaliation by ServiceMaster, or any circumstantial evidence from which retaliation could be inferred, Defendant submits that Plaintiff has failed to establish the causation element of his retaliation claim.  The Court agrees with Defendant.

In opposing summary judgment on the causation issue, Plaintiff submits that he has provided "direct evidence that he was immediately criticized, ridiculed[,] assaulted, and terminated after refusing to provide a false statement to the PHRC.  (Pl.'s Resp. to Def.'s Mot. for Summ. J. at 6 ("Pl.'s Resp. Br.").)  Plaintiff further contends that comments made by St. Clair, Beckadic, and Gibson constitute direct evidence of retaliatory motive.  (*Id.*)  However, Plaintiff fails to elaborate as to the specific comments allegedly made by St. Clair, Beckadic, and Gibson that show retaliatory motive, leaving the Court to guess as to the comments to which he is referring.[11]  Rather, in his responsive brief,  Plaintiff reiterates, almost verbatim, paragraphs 2 through 21 of his affidavit,

---

11. Plaintiff's counsel fails to provide any case law or other authority in support of his argument regarding causation.

without any real analysis or argument as to how these allegations constitute evidence of causation.

In its reply brief, Defendant argues that Plaintiff's affidavit should be disregarded by the Court because it violates the Sham Affidavit Doctrine.  As Defendant correctly observes in its reply brief, the Third Circuit recognizes the Sham Affidavit Doctrine, pursuant to which a district court may disregard an offsetting affidavit submitted in opposition to a motion for summary judgment when the affidavit contradicts the affiant's prior deposition testimony without explaining the contradiction.  *In re Citx Corp., Inc.,* 448 F.3d 672, 679 (3d Cir. 2006) (citing *Baer v. Chase,* 392 F.3d 609, 623-24 (3d Cir. 2004)).  However, a district court is not required to disregard the affidavit in all cases merely because there is a discrepancy between the affidavit and the prior deposition testimony.  *Baer,* 392 F.3d at 624 (citations omitted).  If the plaintiff provides a legitimate reason for the inconsistency, such as "'[w]here the witness was confused at the earlier deposition or for some other reason misspoke, the subsequent correcting or clarifying affidavit may be sufficient to create a material issue of fact.'" *Id.* at 625 (quoting *Martin v. Merrell Dow Pharm., Inc.,* 851 F.2d 703, 705 (3d Cir. 1998)).  Also, courts have generally refused to disregard the affidavit where independent evidence exists in the record to bolster an otherwise questionable affidavit.  *Id.* (citing *Bushnell v. Wackenhut Int'l, Inc.,* 731 F.Supp. 1574, 1578 (S.D.Fla. 1990) (deposition testimony of third party can provide corroborating evidence as to substance of subsequent affidavit); *Palazzo ex rel. Delmage v. Corio,* 232 F.3d 38, 43-44 (2d Cir. 2000) (documentary evidence introduced to support contradictory statements in subsequent affidavit); *Delaney v. Deere & Co.,* 219 F.3d 1195, 1196 n.1 (10th Cir. 2000) (good faith basis for inconsistency may be established by new evidence)).

In the present case, Plaintiff offers no explanation for the inconsistencies between his prior

deposition testimony and subsequent affidavit, other than to state, "[t]he purpose of this affidavit is to respond to Defendant's motion for summary judgment, not to contradict my prior testimony, but to concisely clarify the record." (Pl.'s Aff., ¶ 1.) Clearly, this statement falls woefully short of the explanation required by the Third Circuit in *Baer*. Plaintiff fails to show that there was some confusion regarding his prior testimony or that he misspoke. Nor does he point to any corroborating evidence that would lend credence to his self-serving statements. Thus, to the extent the statements contained in paragraphs 2 through 7 contradict or are inconsistent with his prior deposition testimony, the Court will disregard those statements.[12]

With regard to paragraphs 8 through 21 of Plaintiff's affidavit, the Court cannot determine whether the information contained in those paragraphs is inconsistent with his prior deposition testimony because the excerpts from his deposition attached to Defendant's motion for summary judgment do not contain any testimony on the matters discussed in paragraphs 8 through 21. Nonetheless, many of the statements contained in paragraphs 8 through 21, as well as paragraphs 5 and 6, are either opinion, ultimate or conclusory facts, general denials, or conclusions of law. Under Fed.R.Civ.P. 56(e), parties submitting affidavits in support of or in opposition to the motion for summary judgment must adhere to the following requirements: The affidavits must be made on

---

12. Paragraphs 2 and 3 provide only background information which is not pertinent to Plaintiff's retaliation claim. In paragraphs 4 through 7 of his affidavit, Plaintiff attempts to clarify the events leading up to and surrounding his refusal to provide a written statement. To the extent that the allegations in paragraphs 4 through 7 can be read as supporting the position that Plaintiff was asked to provide knowingly false statements to the PHRC on the employer's behalf, the Court will disregard any such statements or inferences, as Plaintiff's prior deposition testimony (Disilverio Dep. at 103, 108), as well as the testimony of St. Clair (St. Clair Dep. at 28, 31, 36), and the affidavits of Deborah Gibson (D. Gibson Aff. ¶¶ 8-9) and Frank Gibson (F. Gibson Aff. ¶¶ 9-10), clearly show that Plaintiff was never asked to provide false statements on behalf of ServiceMaster.

personal knowledge, set forth such facts as would be admissible in evidence, and clearly demonstrate that the affiant is competent to testify to the matters identified  in the affidavit. Thus, Rule 56(e) limits the proper contents of an affidavit to facts, and the facts presented must be alleged on personal knowledge.  10B C. Wright, A. Miller & M. Kane, *Federal Practice & Procedure: Civil 3d* § 2738 at 345-46 (1998) ("Wright").  "Ultimate or conclusory facts and conclusions of law, as well as statements made on belief or 'on information and belief', cannot be utilized on a summary judgment motion.  Similarly, the mere reargument of a party's case or the denial of an opponent's allegations will be disregarded. . . .'" *Id.* at 346-56 (citing *Olympic Jr., Inc. v. David Crystal, Inc.,* 463 F.2d 1141, 1146 (3d Cir. 1972) (conclusory statement, general denials and factual allegations not based on personal knowledge are insufficient to withstand summary judgment) (citations omitted)) (other footnotes omitted); *see also Container Mfg. Inc. v. Ciba-Geigy Corp.,* 870 F.Supp. 1225, 1231 n. 6 (D.N.J. 1994) (citing cases holding same); *Carey v. Beans,* 500 F.Supp. 580, 583 (E.D.Pa. 1980) ("Affidavits must be devoid of hearsay, conclusory language and statements which purport to examine thoughts as well as actions. . . . Affidavits speculating as to motivations but containing no factual support do not conform to [rule 56(e)], and statements prefaced by the phrases, 'I believe' or 'upon information and belief' or those made upon an 'understanding', are properly subject to a motion to strike.") (citing *Maiorana v. McDonald,* 596 F.2d 1072, 1080 (1st Cir. 1979)).  With these precepts in mind, the Court now turns to the statements in Plaintiff's affidavit which could possibly constitute evidence of causation.

In paragraph 5 of his affidavit, Plaintiff alleges that "St. Clair told [him] that if [he] did not provide the statement, [he] would be disciplined, demoted, or fired."  This statement constitutes hearsay and therefore may not be considered in opposing the summary judgment motion unless

corroborated by independent evidence. *Carey,* 500 F.Supp. at 583 (citations omitted); *Baer,* 392 F.3d at 625 (citations omitted). Unfortunately for Plaintiff, the record evidence here does not bolster his hearsay statement. First, this statement is somewhat inconsistent with Plaintiff's prior deposition testimony. In his deposition, Plaintiff's account of the discussion was more equivocal–Plaintiff contended that St. Clair told him that if he was on the other side of the Grimmitt discrimination charge, he *could* be demoted or *could* lose his job. (Pl.'s Dep. at 114.) On further questioning, Plaintiff conceded that he did not believe this comment was coming from St. Clair, but from "up above." (*Id.*) Plaintiff admitted that St. Clair never told him that it came from the Gibsons, Plaintiff just assumed that from knowing St. Clair. (*Id.* at 114-15.) Second, Vince St. Clair testified at his deposition that he did not recall actually telling Plaintiff that it was in his benefit to provide a statement or that it was necessary to save his job or anything else along that line. (St. Clair Dep. at 45.) In addition, St. Clair testified unequivocally at his deposition that neither Deborah Gibson, Frank Gibson, Beckadic, nor Dawn Howard ever told him to tell Plaintiff that if he did not side with ServiceMaster on the Grimmitt discrimination charge, he would be fired. (St. Clair Dep. at 45.) As St. Clair was not involved in the decision to terminate Plaintiff, and it is clear he was not speaking on behalf of ServiceMaster when he allegedly remarked to Plaintiff that he could be demoted or fired, St. Clair's remarks cannot be deemed evidence of retaliatory motive on the part of ServiceMaster.        The statement contained in paragraph 8 of Plaintiff's affidavit, that after March 22, 2004, Defendant proceeded to prepare his retaliatory termination, is completely inappropriate for a Rule 56(e) affidavit. This statement is a conclusion of law and is not based on personal knowledge, and therefore, will not be considered in determining whether Plaintiff established evidence of causation.

16

In paragraph 9 of his affidavit, Plaintiff states that "St. Clair admitted to me in March of 2004, that Frank Gibson told him to 'start a paper trail' on me, meaning write-ups."  Disregarding for a moment the hearsay nature of this statement, the Court finds that this statement does not constitute evidence of retaliatory antagonism.  The record shows that Frank Gibson's directive to Vince St. Clair to keep a paper trail on Plaintiff was given in late January or early February 2004.  Since this act pre-dates the protected activity, it cannot be considered evidence of retaliatory motive.  Plaintiff's reference to March of 2004 in paragraph 9 of this affidavit does not suggest otherwise as it merely indicates when Plaintiff find out about the directive from Frank Gibson.  Moreover, the record shows that the motive behind this directive was the employer's concern that Plaintiff's growing friendship with the client might result in a loss of business.  Vince St. Clair's deposition testimony corroborates this version of the facts.  Therefore, this act cannot be considered as evidence of causation.

Next, in paragraph 10 of his affidavit, Plaintiff describes an incident between his wife, who was also employed by Defendant, and Beckadic, that allegedly occurred after March 10, 2004 but on or before March 17, 2004, involving an investigation by the U. S. Department of Labor.  First, no argument is provided with regard to how this incident shows retaliatory motive vis a vis Plaintiff.  Second, without even looking at the substance of this allegation, it is clear that this incident occurred prior to the protected activity, and therefore cannot be considered evidence of retaliatory motive.

In paragraph 11 of his affidavit, Plaintiff states that on April 26, 2004, Beckadic, Loub, and Leff met with Plaintiff.  Plaintiff contends the sole purpose of the meeting was to inform him of St. Clair's resignation and Loub's appointment as area manager.  This statement will be disregarded since Plaintiff lacks personal knowledge of the intent of Beckadic, Loub and Leff in calling the

meeting.  The record actually shows that at the April 26th meeting, Beckadic, Loub, and Leff also attempted to discuss with Plaintiff a scheduling problem with his cleaning crew, the unauthorized use of the customer's gym facilities by ServiceMaster employees, the need for his employees to wear uniforms, and the need for Plaintiff to take disciplinary/corrective actions against members of his crew when they did not follow company policies.  (Beckadic Aff. ¶¶ 5-8; Loub Aff. ¶ 1; Leff Aff. ¶ 3.)  Therefore, Plaintiff's statement in paragraph 11 of his affidavit that uniforms, time-keeping and/or gym facilities were not mentioned shall be disregarded as it merely denies Defendant's allegations and is not supported by any evidence in the record.  *Wright* at 346-56.

Plaintiff further states in paragraph 11 of his affidavit that  Beckadic criticized him in front of Loub and Leff for not providing a statement in support of the employer on the Grimmitt discrimination charge.  This is a conclusory or ultimate fact and will be disregarded by the Court. Plaintiff then states, "Beckadic admitted to me that I felt intimidated."  This statement makes no sense, and without any explanation or argument from Plaintiff as to how this statement proves causation, the Court will disregard it.  Finally, Plaintiff states that "Beckadic also expressed that I should have been terminated on March 19, 2004, for refusing to provide the statement."  Again, Plaintiff attempts to use uncorroborated hearsay to create a material issue of fact.  This he cannot do.

With regard to paragraph 12 of his affidavit, Plaintiff refers to a meeting that occurred on April 28, 2004 with Beckadic and Plaintiff and his crew, where Loub was introduced and the subject of uniforms was discussed.  For the most part, these statements in paragraph 12 do not appear to be based on personal knowledge.  Other than the statement that "[s]mocks were not supplied to the crew during my employment," the Court will disregard the remaining statements in paragraph 12

18

as Plaintiff clearly lacks personal knowledge regarding what Beckadic's purpose was in meeting with the crew and whether smocks were in fact provided after his termination.  The sole remaining statement in paragraph 12, that smocks were not provided during his employment, does not provide any basis for finding a retaliatory motive.

Next, in paragraph 13, Plaintiff describes an incident which allegedly occurred prior to the meeting on April 28, 2004, involving Beckadic.  Plaintiff contends that without provocation or comment, Beckadic walked up to him and rubbed his hand on Plaintiff's face.  Plaintiff claims the incident was videotaped and witnessed by the security guard; he claims he filed a police report, but did not press charges.[13]  Plaintiff further states he was not injured, and that he did not retaliate or say anything in response.  Significantly, Plaintiff states in his affidavit that he does not know why Beckadic did this.  Indeed, in his responsive brief to the summary judgment motion, Plaintiff states "he is left to guess at Beckadic's motive."  (Pl.'s Resp. Br. at 8.)  Clearly, if Plaintiff has no idea what Beckadic's motive was, this Court cannot and should not be asked to presume it was in retaliation for Plaintiff's refusal to provide a written statement.  There are any number of other explanations for Beckadic's conduct which are not predicated on retaliatory antagonism.  Thus, the Court finds that this incident does not provide a basis for finding a retaliatory motive.

Plaintiff's statements set forth in paragraph 14 consist entirely of opinion, general denials, or conclusory facts.  As these types of statements are not the proper subject of an affidavit under Fed.R.Civ.P. 56(e), the Court has disregarded paragraph 14.  *Wright*, *supra.*  Therefore, the allegations in paragraph 14 cannot provide evidence of causation.

_____

13.  Although Plaintiff cites corroborating documentary evidence of this incident, he has not provided any of it to the Court in opposing the motion for summary judgment.

The statements set forth in paragraphs 15, 16, 17 and 18 consist entirely of conclusory or ultimate facts, opinion, and general denials, and as such, are not the proper subject of a Rule 56(e) affidavit. *Wright*, *supra.* For example, Plaintiff denies that during his employment, Defendant ever informed him about problems with the unauthorized use of the customer's gym facilities, proper time keeping procedures, scheduling and/or absenteeism. (Pl.'s Aff. ¶¶ 15-17.) These statements amount to nothing more than a denial of Defendant's allegations and therefore will be disregarded by the Court. In addition, Plaintiff states he always followed procedures, his record was exemplary, he had no discipline record prior to his termination, and he was not insubordinate. (Pl.'s Aff. ¶ 18.) Undoubtedly, these statements constitute conclusory or ultimate facts and/or opinion. As such, they too are not proper material for a Rule 56(e) affidavit and will likewise be disregarded. Accordingly, the allegations set forth in paragraphs 15, 16, 17 and 18 do not provide any evidence of causation.

In paragraph 19, Plaintiff describes an incident that occurred on April 29, 2004 involving Beckadic. Although there is some dispute as to who actually originated the telephone calls, Plaintiff states that Plaintiff and Beckadic conversed via telephone three times on April 29, 2004, and the subject of those calls was a visit by the Penn Hills Police Department to Beckadic's residence in response to threats made by the boyfriend of another employee (Patty) who had been disciplined by Beckadic and Leff.[14] Again, Plaintiff fails to explain how this incident is indicative of retaliatory motive in his retaliation case. Rather, Plaintiff states: "Beckadic told me 'shut up and you'll be rewarded. I took this to mean that I would be rewarded for being silent about the discipline of Patty,

---

14. Defendant disputes that this was the purpose of the calls. According to Beckadic, Plaintiff called him at home three times that evening using profanity to express his belief that he should be left alone to run his job site as he saw fit. (Beckadic Aff. ¶ 21.) For purposes of deciding this motion and giving Plaintiff the benefit of doubt, the Court will assume Plaintiff's version of the facts is true.

although I disagreed with the discipline issued to her." Plaintiff's understanding of what Beckadic meant by his alleged remark is not based on personal knowledge and therefore may not be considered in opposition to the summary judgment motion. That leaves just the remark by Beckadic which, arguably, constitutes inadmissible hearsay, but in any event, standing alone does not indicate any retaliatory animus on the part of Beckadic.

Finally, in paragraph 20, Plaintiff states that his employment was terminated verbally on April 30, 2004 by Beckadic, Leff, and Loub in front of the cleaning crew. He further states that he was not provided with anything in writing detailing the reasons for his termination, nor was he told he was terminated for insubordination or any policy issues. These statements do not evidence any intent to retaliate. Plaintiff's employment was at-will, and therefore, his employer could terminate his employment for any reason that was not unlawful. In addition, Plaintiff includes in paragraph 20 of his affidavit several statements allegedly made by Beckadic, which most likely constitute inadmissible hearsay. Specifically, Plaintiff claims that Beckadic told him he was terminated because he was not a "team player", and that he should file for unemployment and complain to agencies and "do what you have to do." This innocuous reference to "team-player", without more, cannot be said to be evidence of a retaliatory motive. Indeed, "team player" could mean a number of things; for example, it could refer to an employee's refusal to follow the employer's policies and rules regarding uniforms, attendance, and scheduling, as opposed to referring to an employ who fails to provide a written statement in support of the employer's case in a discrimination charge. However, in light of the evidence of record, the Court finds it is unlikely that Beckadic was referring to Plaintiff's failure to provide a written statement. Both Deborah Gibson and St. Clair testified that Plaintiff was told to forget about providing the statement and no one from ServiceMaster pursued

the issue after March 22, 2004. In light of these facts, the Court finds that a reasonable jury would find that Beckadic's alleged remark to the effect that Plaintiff was not a team player does not evidence an intent to retaliate.

An examination of the other remarks allegedly made by Beckadic reveals that a personal conflict apparently developed between Plaintiff and Beckadic, beyond the employment issues, as demonstrated by (1) Beckadic allegedly asking the cleaning crew if they would have his back if Plaintiff took a swing at him (Plaintiff does not establish that he has personal knowledge of this statement and even if he did, it appears to be hearsay), and (2) Beckadic's alleged possession of a roll of quarters in his pocket to be used as a weapon (as stated by a security guard to Plaintiff–hearsay upon hearsay).   (Pl.'s Aff. ¶ 20.)  Thus, the essence of the conflict between Plaintiff and Beckadic appears to be more of a personal nature than employment related, and therefore, does not provide evidence of retaliatory motive.[15]   Moreover, Plaintiff has failed to lay any foundation to establish his personal knowledge of these facts.  Nor does Plaintiff offer any corroborating evidence that would lend credence to the hearsay statements.  To this end, the Court notes that the entire cleaning crew and a security guard allegedly witnessed his termination, yet Plaintiff failed to produce any affidavits from any of these witnesses.  Therefore, the Court finds that these remarks by Beckadic do not provide evidence of retaliatory antagonism.

Even if the remarks made on April 30, 2004 by Beckadic could be construed as an act of retaliatory antagonism, which the Court declines to find, this was but one incident and one incident

---

15.  Indeed, Plaintiff is not the only employee to have a conflict with Beckadic.  Vince St. Clair voluntarily resigned his position due to a conflict with Beckadic, who supervised him.  (Concise Stmt. Mat. Facts, ¶¶ 22-23; Pl.'s Resp. Br. at 4.)  This suggests, at the very least, that Beckadic's management style may have been offensive to some of his employees.

does not make a pattern of retaliatory antagonism.  *Washco,* 402 F.Supp.2d at 560.  Moreover, the Court finds that Plaintiff has failed to present any evidence that his termination resulted from his refusal to provide a written statement.  The evidence shows that ServiceMaster has consistently maintained that the basis for Plaintiff's termination is his insubordination and failure to follow company policies, which is grounds for termination under the employee handbook. (Def.'s Ex. F at 14-16.)  The lack of inconsistency in Defendant's reason for terminating Plaintiff also supports the Court's finding of no causation.  *Farrell,* 206 F.3d at 281.

For the reasons articulated above, the Court finds that Plaintiff has failed to produce evidence of a pattern of retaliatory antagonism during the interim period between his refusal to provide a written statement and his discharge.   Accordingly, he has failed to meet his burden on the third element of his retaliation claim.  Because Plaintiff bears the burden of establishing the *prima facie* elements of his retaliation claim, and it is clear he cannot do so as to the causation element based on the record evidence, the Court will grant Defendant's Motion for Summary Judgment.

## IV.    <u>CONCLUSION</u>

For the reasons set forth above, Plaintiff has failed to adduce sufficient evidence to show that a triable issue of fact exists with regard to his retaliation claim.  Therefore, because Defendant is entitled to judgment as a matter of law, the Court will grant Defendant's Motion for Summary Judgment.  An Order consistent with this opinion will follow.

Dated: March 31, 2007                              By the Court:


                                   s/Lisa Pupo Lenihan
                                   LISA PUPO LENIHAN
                                   United States Magistrate Judge

23

cc:     All Counsel of Record
        *Via Electronic Mail*